Thank you, Your Honors, and may it please the Court. There are two claims before this Court today. Unless there are objections, I'd like to start with 706-1. Your Honor, in 2008, Congress imposed a mandate upon the Department of Agriculture. I'm sorry, you just, what's 706-1? 5 U.S.C. 706-1, which is our... Oh, alright, a statutory, I thought you were giving me a case number. I apologize, Your Honor. No, the unlawfully withheld claim. In 2008, Congress imposed a mandate upon the Department of Agriculture. It commanded the Department to promulgate certain regulations related to Section 202B of the Packers and Stockyards Act, and it mandated that it do so by no later than June 2010. It is now September 2018, and we have no such regulations. But what is more, Your Honors, is that in this recalcitrant and disregarding its statutory duty. And we see this in a number of ways. The Department has not only withdrawn the proposed 202B regulations and entirely terminated the rulemaking, it stated explicitly it intends to take... So every time an agency changes its position, it's recalcitrant? No, Your Honor, I think there... If you like the former reg? No, Your Honor, I think there are a number of ways that the agency could have adopted its proposed rule. If it didn't like the way that it was going forward, it could have called for more comment. If there was a particular issue it sought additional information about. But it's not just the withdrawal of the proposed rules, Your Honor. The agency has now published its spring 2018 regulatory agenda. As Your Honors I'm sure know, this regulatory agenda is required by OIRA to be submitted and is required to capture every regulatory issue that the agency intends to move forward with in the upcoming year. In addition, it's published its long-term agenda, which likewise is required to capture every regulatory issue it intends to move forward with in two to three years. Notably, the 202B regulations are not included on either of those regulatory agendas. You know, this is not a congressional committee. You're arguing to a third branch institution, which has all writs act jurisdiction to intercede only in the most extraordinary circumstances. So don't give us this list of what they're going to do and not do this year, next year, or the following year. What's your best case for appellate grant of mandamus for agency unreasonable delay? I would point, Your Honors, to... Where it was granted. Yes, Your Honor. I'd point, Your Honors, to INRI Corps Communications, which is a DC Circuit 531F3RD849. I'd also point, Your Honors, to INRI Blue Network, DC Circuit Case 234F3RD1305. These are in your briefs? The Corps Communications case is, Your Honor. I don't believe the Blue Water Network case is. Then you'll have to put in a Rule 28J. We're more than happy to do that, Your Honors. But, Your Honor, the DC Circuit has been clear that when this Court is considering whether to exercise its mandamus jurisdiction and intervene, the Court is supposed to consider the track factors. Now, the first and most important factor... Have we adopted the track factors or not? What's your view of that? Your Honors, the Eighth Circuit in Ershad has adopted the track factors with respect to cases not involving statutory deadlines. Of course, we do submit that in a case involving statutory deadlines, the track factors should not be applied, and rather, this Court must grant a remedy when the agency has missed that deadline. But I would submit that, Your Honors, don't actually have to address that question today, because the equities clearly point in favor of a remedy in this case. Track makes clear that the most important factor is whether Congress has indicated a speed with which it intends an agency to act, and that can be no clearer than when Congress imposes a deadline, as it is done here. But in addition, the track factors make clear that the Court is supposed to look to whether the agency is being recalcitrant, and everything indicates here that the agency has no real intent of applying... decision-making, right? No, Your Honor. I think the sixth factor of track asks to look at whether there's agency bad faith, and the primary way of showing agency bad faith is showing that the agency has no intention of really complying with its statutory duty. Well, is there a difference between how they've treated 210 and 211? Yes, Your Honor. 201.211 is the proposed regulation that would comply with the 2008 Farm Bill. 210 and 201.3 are part of the package of farm affair practices rules that are at issue in this case, but those were not statutorily mandated. So our 706.1 claim is specifically about the issue that was addressed by proposed rule 201.211. And again, Your Honor, I think it's important that we look at what the agency has said to the public, and what the agency has said to this Court. I would submit that if Your Honors are to go and look at the government's briefing in many of these 706.1 cases, what you'll see often is that the government is presenting to the Court some amount of detail about the agency's plan to comply with its legal obligations. Is it recalcitrant for an agency not to take an action that the Congress refuses, the Appropriations Committees refuse to fund? Well, Your Honor, I think that it'd be one thing if this case were brought during 2012 through 2015, but we're bringing this case in 2018. The spending moratorium was lifted three years ago as of September 30th of this year. So when did the delay become unreasonable? Give me a date. I think the delay became unreasonable when it withdrew the rules in October of 2017, and when the agency stated explicitly it had no intention of moving forward. I think that delay became even more unreasonable when the Department published its regulatory agenda and did not include in that agenda the 202B regulations. I think the delay is becoming even more unreasonable the longer the way that we get from the 2012, excuse me, the 2010 deadline, and the longer we see the agency not taking any action. There's simply nothing in the public record, nor before this Court, to suggest that the agency is taking its congressional duty seriously. And Your Honor, the agency certainly has a significant amount of deference in determining how and when it will regulate, but it cannot substitute its own judgment for that of Congress. Congress has explicitly told it to mandate it to regulate in this area. Well, now wait, they don't have to regulate. They have to establish criteria. Well, they have to publish regulations that would establish criteria. Yeah, they could. How vague can they be in establishing criteria? Well, I don't think, Your Honor, that Congress gave them any parameters on what that criteria must look like, and we certainly are not asking Your Honors to impose any duty upon the agency. We're not asking Your Honors to require them to establish certain criteria as opposed to others. We're simply asking this Court to intervene, to compel the agency to comply with what Congress has commanded. If they had adopted, taken action stating, we are leaving our historic policy in this regard and take the position that formerly we were wrong. Excuse me, Your Honor. In other words, did the statute mandate the action you want them to take? No, it didn't. So if they had withdrawn the informal rule and in its place promulgated the opposite rule, you would still be here or you would not be here? Well, I think, Your Honor, on our 706.1 claim, I think if the agency had published regulations establishing criteria for what it would consider for 202B violations, then we would not be here, regardless of what that criteria were, at least not under 706.1. 706.1 simply asked the Court to compel the agency to do what Congress has said it must do, and the agency was told to publish criteria for 202B. It has not done that. Well, if the regulation said the criteria are governed by the totality of the circumstances, we view this statute to be comparable to the Fourth Amendment. You would still be here? Or you would say that that was a violation of the command, Congress's command? Absolutely not, Your Honor. No. Well, that's effectively what they did, that they've done. I mean, they took action and they withdrew the action. This is not a no-action situation. Yes, absolutely this is, Your Honor. Congress— Well, I know it is absolutely to you. I'm telling you, it's not absolutely to me. Well, Your Honor, Congress said it must establish criteria. There are still no established criteria. Not even the government would suggest that there are established criteria that the Department has put forward. And I think it's important, again, Your Honor, to separate out 201.211, which is the statutorily mandated regulation, from the other Farmer Fair Practices Rules. And 201.211 did provide, I believe, eight criteria that the Department would consider when deciding whether a packer or a poultry processor had violated 202B of the Packers and Stockyards Act. They have withdrawn that and not put anything in its place. So I think this absolutely is a case of no action on the particular statutory command. If they'd given really good reasons, really, really, really good reasons, they'd say, all these courts are all after us and we have no chance, it's going to bankrupt our agency to defend all this stuff, you know where they're coming from. If they'd done all that stuff, do you think they'd be OK in withdrawing? No, Your Honor, I don't think so, because Congress clearly had all of that in mind when it imposed the mandate. And I also don't think that it's this Court's position to question Congress's mandate in that regard, nor is it the agency's. But it does say the vague criteria, and it does say whether, right, after the little one on each of the sections of the original act, to establish criteria, whether, whether, whether, whether. Yes, Your Honor. They could pretty much put negatives there, right? They could pretty much say, we don't think there is a criteria on undue preference. We don't think there is a criteria on, right? That comply with the law. That might comply with the law, but again, they have not done that here. I'd like to make just a brief point on the arbitrary and capricious claim, if I can. First of all, Your Honor, I think the withdrawal of 201.211 is arbitrary and capricious in so far as it fails to even mention the Congressional- I'm sorry, Your Honor. 2016. There's quite an arbitrary and capricious overhang to that timing, isn't there? I don't think so, Your Honor. Between administrations. In other words, you're leaving a time bomb for the incoming administration. I don't think that's true, Your Honor. The agency- I know you don't, but that's the way most of the world would look at it. Your Honor, the agency considered 61,000 comments and held five public meetings across the country, considered the rules for a total of almost six years before putting forward the rules, and indeed recognized that at least part of the rules related to the competitive harm piece was a significant change and therefore opened up the comment period to allow people to continue to- Okay, but how are we to decide what criteria do we use to establish arbitrary and capricious in this context? Your argument or my suggestion of how it may look to a great many other people? I think, Your Honors, you're bound by the Supreme Court's case law in this regard, and that would be Fox Television and Encino Motorcars. And in those cases, the Supreme Court is clear that although an agency is allowed to change its policy, it must provide good reason for it. And we don't believe good reason has been provided here. The agency, when it issued the Farmer Fair Practices Rules, intended to increase private enforcement of the act. It considered the cost to the industry, it considered the cost to the department, and it said that the benefits that would accrue to small farmers across the country outweighed those costs. Less than a year later, it changed its mind and now is reweighing the costs and benefits and determining that although there will be no benefits accruing to farmers, the costs to industry are more important. That's absolutely an acceptable change in policy for an agency to make, especially in a change of administration. But what they must do is provide good reason, and they simply have not done this. The staleness argument doesn't hold up because the record was no longer stale. What case are you talking about that involved a proposed rule by a prior administration that was not finally adopted by an incoming administration? Well, I think, Your Honor, there's plenty of cases. I asked you what case. Do you have a case like that? Your Honor, I would point this court to there's a case in 2001. I'm blinking on the name, Your Honor. I can certainly submit a 28-J letter on this. There are a number of cases coming out of the D.C. I don't need any more briefs. We've got enough. Yes, Your Honor, there are a number of cases that come out of the D.C. Circuit this year. This is a very rare judicial action. No, Your Honor, there's a number of cases coming out of the D.C. Circuit. This precisely, excuse me, the International Entrepreneur Rule case, a case out of D.D.C., was decided last July. There, there was a rule that had been finalized towards the end of the Obama administration. It had not yet gone into effect. The Trump administration took over and delayed the rule without going through notice and comment. And the agency basically said that it did not have to stick to the rules that were published towards the end of the prior administration. But the court disagreed and said the agency is still bound by the APA's principles. The agency is bound by the notice and comment principles, by the arbitrary and capricious standard. Just because there's a change in administration doesn't mean that an agency is allowed to disregard actions taken by the prior administration. Was that a final action or a proposed action? That was a final action. Right. My question was proposed action. There's quite a difference. Your Honor, again, they can withdraw the proposed rules. That's what they did. But they cannot do so if it violates Congress's mandate, which at least one of the withdrawals of the proposed rules did. Well, but we don't have any direct... And the IFR... Wait, wait, wait, this gets to remedy. I see no basis for us to order reinstatement of the proposed rule, the remedy you would like. If you are right strictly on the unreasonable delay, it seems to me the only remedy is to order them to take action, not to direct what action must be taken. Absolutely. On the 706.1 claim, I completely agree. We're simply asking, Your Honors, to issue an order containing... Any of your claims. There's no claim you have that I can see that would authorize, give us Article III authority to direct that a withdrawn agency rule be put into effect. Do you have any contrary authority? Yes, Your Honor. Vacature of a rule is baked into the text of the APA and certainly has been applied by courts across the country, including the D.C. Circuit. And so the withdrawal of the IFR could be vacated, which would result in the IFR springing back to life. Yes, but my question was where the only problem is unreasonable delay. I don't... Now you're saying, yeah, okay, if there was a change of policy that was wrong on the merits, that's a different situation, but you withdrew to your delay argument, and that's when I said is there any unreasonable delay case where the remedy was to mandate a particular positive action? No, Your Honor, and I apologize for being unclear, and I realize I'm out of time if I could just briefly respond. On our 706-1 claim, we are not asking this court to mandate any particular action of the agency. We're not asking, Your Honors, to require the agency to reinstate the proposed rule. We are simply asking for the court to compel the agency to act. On our 706-2 arbitrary and capricious claims, which are our merits claims, there we are asking for vacature of both the withdrawal of the proposed rule and the withdrawal of the IFR. Unless Your Honors have further questions, I will rest. Thank you. Mr. Shaw. May it please the court. Whaley Shaw for the United States. I want to strongly resist the opposing counsel's suggestion that the agency has been recalcitrant in this case. How did you end your sentence? I didn't hear how you ended the sentence. The suggestion that the agency has been recalcitrant in responding to Congress's mandate. Well, why wouldn't you publish some kind of regulation? If you look at the words of what Congress passed, you know, it says to establish criteria of whether. You know, you can put out very much on the one hand, on the other hand, regulation and satisfy that. Well, I think that that greatly diminishes the complexity of the issues at stake here. But let me just first reiterate that the agency is firmly. Because you haven't put out any regulation at all, right? No, the agency has not finalized a regulation. Congress says you're supposed to do it. Yes. Okay. So why wouldn't you put out some kind of regulation? Well, the agency is currently working on that, and the agency is fully committed to. Your opponent said it's not even on your regulatory agenda. I don't. She is correct that it is not on the spring 2018 regulatory agenda. That does not mean that the agency is not working on the rule or that it is not committed to complying with Congress's mandate. In fact, it has every intention of doing so. And I can also. In what time frame? Well, the agency has not given a public time frame for when it expects to comply with the rule. But the agency has authorized me to state that it intends to place the proposed rule on its regulatory agenda for the coming spring. So that would be the spring of 2019. And at that time, the agenda listing would indicate when the agency intends to take the next step in the regulatory process. Which, in this case, would probably be a notice of proposed rulemaking. And I think, as my opposing counsel indicated, the regulatory agenda is supposed to cover items that agencies intend to act on within the following year. But the agency, as you indicated, there has been no other public announcement yet of the timeline for action. But I also just want to give a court a sense of what the agency has been doing in the years since the Congress enacted the 2008 Farm Bill that contains the statutory mandate issue here. With regard to this and related rules, it's held three public meetings. It's held five joint public workshops with DOJ. It's considered over 60,000 comments. It's conducted detailed economic analyses of the impact of the rule. It's conducted other required regulatory impact analyses. And at the end of this, it's proposed two very different rules that would have complied with the statutory mandate. Now, both of those rules ultimately had significant problems that caused the agency to reconsider its approach and start anew. But the fact that the agency has encountered these difficulties does not indicate that it's not been acting in good faith to comply with the statutory mandate. The agency has devoted tremendous time and resources to complying with the mandate. And this is not a case where, for all of these reasons, this is not a case where intervention to reorder the agency's priorities is appropriate. And that is particularly so here because the consequence of dictating a timeline for complying with this statutory mandate would be to prevent the agency or diminish the agency's ability to comply with other mandates also specified by Congress. How many others do you have that have a two-year period like this from 1908? I'm sorry, 2008. Well, it's not from the same time, but the agency is also facing another two-year statutory deadline at this very moment, which is the Congress's two-year deadline to complete the bioengineered food labeling standard. And when was that passed by Congress? That was passed by Congress roughly two years ago. Okay. So I guess that was July 2016. Did you have a first in, first out, or a last in, first out? No, that is absolutely not a principle that's recognized by the APA or by any court. Courts have repeatedly recognized that agencies have the expertise and the ability to determine which of the items on their agenda should have the most priority. And that's particularly so in this case, again, because both of these regulations are required by Congress. Do you have any others that have this kind of time period you've identified, too? Well, I've identified the bioengineered food labeling standard because that is a rule that the specific part of USDA. My question is a simple one. How many of these you got from Congress? I don't have a count for all of the rules that, you know, for all the statutory deadlines that USDA as a whole is currently facing. But these are the deadlines that the Fair Trade Program of the Agricultural Marketing Service of the USDA is currently facing at this time. And so to dictate that the agency act within a certain time with respect to this rule would prevent or diminish the ability of the rulemaking resources of that portion of USDA to complete the other rule that was also required by Congress. And in light of these statutory mandates, I think it's entirely reasonable for the agency to exercise its judgment as to where to place the limited resources that has been given by Congress. I think the inappropriateness of relief in this case is reinforced by the application of the track factors. And, again, I've already mentioned that competing agency priorities. But just to go to the issue of reasonableness, the Congress, although Congress originally enacted a two-year deadline, it made very clear shortly thereafter that the agency was not to comply with that deadline when it enacted appropriations riders that effectively prohibited the agency from even working on the rule for over four years. So I think that certainly has to be taken into account in discussing any expectation that Congress had with regard to timing. And in particular, I think it would be very odd to think that after enacting these appropriations riders, Congress expected the courts to strictly enforce the original two-year deadline by means of the mandamus remedy. I think that Congress's actions clearly indicate that it did not expect the original deadline to be so enforced. Now, where do you get that understanding? Are you talking legislative history or common sense or what? Yeah, I think it's common sense. If Congress has prohibited the agency from expending any funds to work on the rule, then it clearly would not expect a court to come in and issue a writ of mandamus directing the agency to act on that very rule. But what about the years that they don't enact the rider? Doesn't that mean that's where you're supposed to work on it? I think that's right. And, in fact, in those years, the agency has been working on it. In 2010, the agency proposed its first version of a rule that would have complied with the mandate and then proposed a second version in December 2016. Now, the second version was radically different from the first. Well, I'm confident Justice Frankfurter would agree that the court should stay out of this tussle between the elected branches, but I'm not sure where you get the authority that that reflects congressional thinking. Well, I mean, Congress enacted a statutory deadline, but I think it's an open question as to how Congress expected courts to enforce that deadline, whether it be an immediate mandamus. Open question, sure, because Congress would probably split 50.1 to 49.9 on the question, depending on whether the action that wasn't being taken was good or bad in the individual's view. The question to me is whether the third branch, the unelected branch, has any business wandering into this. It's not even a stalemate. I mean, the Appropriations Committee did their thing for a while, and Congress can use appropriations to go the other way. You either do what we told you to do, or guess what happens to next year's budget. I mean, this is the way these things get fought out by people that are elected. And I think both Supreme Court precedent and D.C. Circuit precedent support the idea that mandamus is an extraordinary remedy. It intrudes on the institutional confidence and advantage of the executive branch, and it's really a remedy that should be reserved only for the most extraordinary cases. Did you give a reasoned decision on not taking any further action just on 211, focus on 211? Yes, absolutely. Well, let me just first point out that the standard of review in that case is extremely deferential because it is an arbitrary and capricious claim, but in this case, it's both an informal rulemaking and an agency's failure to act as opposed to an action. And this is, again, this is a proposed rule that has never had the force of law, never been finalized and never had the force of law. So, yes, I think the agency fully satisfied its obligation to explain its decision to take no further action on that rule. Is it true that you made no mention of the congressional deadline? Didn't even mention it? Yes, I think that's right. I don't think that it was a relatively short notice, and it did not mention the statutory deadline, but I don't think that makes the decision in any way arbitrary and capricious. The agency had, again, proposed the rule in 2016, and after that solicited comments from the public, which it received until March 2017. So based in part on those comments and on its decision to reconsider a regulatory strategy that would have brought it into immediate confrontation with at least the 5th and 11th circuits, it decided to withdraw that rule. So those are perfectly good reasons for taking no further action on the rule, and that fully satisfied the arbitrary and capricious standard. The question of whether the agency has complied with the statutory mandate, whether there's been unreasonable delay, and whether this court should order relief is a separate question. Even petitioners concede that even if the agency has unreasonably delayed action, the petitioners don't have any particular entitlement to that rule. So whether or not that rule was, you know, whether the notice of no further action on that rule was arbitrary and capricious should be judged on its known merits and not conflated with the. . . Do they at any time have the right to a rule? Yes, there is a statutory requirement that the agency promulgate a rule, and again the agency intends to comply with that mandate and is currently working on such a rule. The other mystery is, to me, allegedly at all times here since June 18 of 2008, the departments had the same position, right? That the act does not require proof of competitive injury, right? Yes. Yeah. Allegedly that's been the position the whole time. So why wouldn't you put that out as the criteria? Well, let me. . . So I just want to be careful to separate the issues. I think that the position that proof of harm to competition or likely harm to competition is not necessarily required in all cases. That was the rule that was actually finalized as 201.3A. That was the harm to competition rule and later withdrawn. I guess I don't know if the agency has considered making that the sole criteria, but it is a very difficult issue for the agency and contested issue as to how to define the criteria that Congress has required. The statute is incredibly capacious. It simply makes it unlawful to give an undue preference. So like antitrust law, right? Well, it's Section 5 of the FTC Act. That's what it reads like. I mean, there are certainly analogies, but there are many unique circumstances. For which there's no private right of action, so the agency's criteria can be much more unilaterally crafted. And here, it's an incredibly capacious statute, and there are an incredible number of decisions that the agency has to make. Now, I mentioned earlier all of the public meetings and workshops and so forth. And even after that, when the agency proposed the rule in 2010, it later realized that those criteria could have a variety of unintended consequences, including potentially making it unlawful to use certain alternative marketing arrangements that are common in the industry. So in 2016, the agency had to completely revise its approach. It went from criteria that were, for example, in 2010, one criteria was whether contract terms were made available to all. In 2016, one of the criteria was whether there was discrimination based on race, sex, or religion. So again, a completely different regulatory approach. So not only does the agency have a lot of work before it to figure out a workable and sensible rule, a sensible set of criteria, there are also a variety of procedural hurdles that the agency has to go through before it can finalize the rule. It has to complete economic analysis and other required analyses before proposing the rule. It has to have notice and comment. It has to consider and respond to those comments. And at both the NPRM and the final rule stages, it is likely that this rule will have to go through a 1B review, which takes many months. So again, there's just a huge amount of work that's before the agency in order to comply with Congress's statutory mandate. And in this case, I don't think that it's either necessary or appropriate for this court to dictate a timeline for doing so. If the court has no further questions, we ask that the petition be denied. Thank you. Ms. Johnson gave a couple minutes for rebuttal. Your Honor, it's just a couple of quick points. Counsel points out all that we will have to do to put forward a regulation, but I'd like to point out that much of the work has already been done in the proposed rule in 2010, in the IFR in 2016. Even with the withdrawal of the IFR, it takes into account much of what it would have to take into account going forward. Also, a point on agency recalcitrance. Again, counsel points to all that the agency has done, but all that they can point to is what happened prior to the withdrawal of the rules. Since the withdrawal of the rules, the agency has done nothing. Now, counsel suggests that the agency supposedly will be putting the 202B regulations on its spring 2019 regulatory agenda, likely suggesting it will put forward an NPRM by spring of 2020. But I point out that that's two years from now. When was Secretary Perdue confirmed? He was confirmed fairly early in the administration, Your Honor. I don't have the precise date in front of me. I thought it was quite late in 2017. Your Honor, I'm afraid I don't know the date of his confirmation. I think he was one of the later cabinet officers, but I could be wrong. He certainly was confirmed by October when these rules were withdrawn, and he was out and talking about these rules in public and the withdrawal of those rules. So, Your Honor, again, Congress thought that this could be done in two years. Now, even taking the agency at its word that it's supposedly going to put out an NPRM by 2020, that's two years before even getting to an NPRM process, and I just think that that's too long. A quick note about agency priorities. The D.C. Circuit has been clear that that particular track factor is to be given less weight in two circumstances. One, it's to be given less weight in the circumstance where there's a statutory deadline, and that comes from a case called Mashpee. Again, I can submit that in a 28-J later if you prefer. Excuse me, Mexichem. It's 787F3R544. And then the other circumstance where agency priorities are to be given less weight is when there is a showing of agency recalcitrance, and that comes from the D.C. Circuit's case in In Re Court Communications, which is in our brief. So I think that this court should be at least a bit skeptical of the agency's attempt to prioritize and say that it cannot spend any resources on this congressional mandate that's been around for 10 years, unless your honors have further questions. Thank you, counsel, for the argument. You were well prepared and covered complex issues quickly and helpfully, so we appreciate that, and we'll take it under advisement.